**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 22-23635-CIV-SCOLA/GOODMAN**

WORLDWIDE DISTRIBUTORS, INC.,

     Plaintiff,

v.

MAVEN MED, INC.,

     Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON
PLAINTIFF'S _AMENDED_ MOTION FOR DEFAULT FINAL JUDGMENT**

Worldwide Distributors, Inc. ("Worldwide Distributors" or "Plaintiff") filed the instant action against Maven Med, Inc. ("Maven Med", "MAVEN", or "Defendant"), seeking a default judgment in its favor in the amount of $656,250.00. [ECF No. 1]. The Complaint alleges three causes of action -- breach of contract, conversion, and unjust enrichment -- stemming from Plaintiff's purchase of 37,500 COVID test kits which Defendant failed to deliver. *Id.* Defendant did not respond to the Complaint and Plaintiff moved for and obtained a clerk's default. [ECF Nos. 12-13]. Plaintiff filed a motion for default judgment and later an amended motion for default judgment. [ECF Nos. 14; 18].[1]

---

[1]     Plaintiff filed an initial motion seeking the entry of a default final judgment against Maven Med, in the amount of $657,102.00 (this amount included $852.00 in costs). [ECF No. 14]. Because Plaintiff's "motion contain[ed] no analysis, no case law, and no citations to the paragraph numbers or the exhibits of the Complaint," the Undersigned instructed

United States District Judge Robert N. Scola, Jr. referred Plaintiff's motions to the Undersigned "for a report and recommendations, consistent with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of the Local Magistrate Judge Rules." [ECF Nos. 15; 20].

The Undersigned held an evidentiary hearing. [ECF No. 23]. Plaintiff presented the testimony of its vice president, Ariel Rodriguez, and the Court admitted into evidence Plaintiff's Exhibits 1-21. [ECF No. 24]. Maven Med did not respond to Plaintiff's motion or amended motion, attend the evidentiary hearing, or otherwise participate in this case.

In a pre-hearing Order [ECF No. 22], the Undersigned identified certain topics for Plaintiff to address in court. The Undersigned also issued a Post-Evidentiary Hearing Administrative Order and a Paperless Order requiring supplemental briefing. [ECF Nos. 25; 29]. The Orders expanded on some of the pre-hearing topics and added new topics (i.e., waiver of service by an attorney, standing, etc.) which arose during the evidentiary hearing. *Id.* On May 18, 2023, Plaintiff filed its memorandum of law in response to the Court's Orders. [ECF No. 30].

For the reasons discussed below, the Undersigned **respectfully recommends** that

---

Plaintiff to file a memorandum of law and a more detailed, supporting affidavit. [ECF No. 17].

Instead of filing a legal memorandum, Plaintiff file the instant amended *motion* for the entry of a default final judgment, in the amount of $656,250.00 (which did not include costs). [ECF No. 18]. Plaintiff also filed an affidavit from its president, Joseph E. Doyle. *Id.* at 9-10.

the District Court **deny** Plaintiff's Amended Motion for Default Judgment [ECF No. 18], **dismiss without prejudice** the Complaint [ECF No. 1], and provide Plaintiff with an opportunity to file (if possible) an amended complaint which comports with the Federal Rules of Civil Procedure, Florida's long-arm statute, and due process.

## I.   Applicable Legal Standard

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A party may then apply to the district court for a default final judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008). "It is the general rule that default judgments are ordinarily disfavored because cases should be decided upon their merits whenever reasonably possible." *Creative Tile Mktg., Inc. v. SICIS Int'l, S.r.L.*, 922 F. Supp. 1534, 1536 (S.D. Fla. 1996).

A court may not enter a default final judgment based solely on the existence of a clerk's default. "Prior to entering a default judgment, the Court must ensure that it has subject matter jurisdiction over the action and personal jurisdiction over the defendant, the defendant has been properly served, and the complaint adequately states a claim upon which relief may be granted." *Verdejo v. HP Inc.*, No. 21-20431-CIV, 2021 WL 5933727, at *12 (S.D. Fla. Nov. 8, 2021), appeal dismissed, No. 21-14267-JJ, 2022 WL 758024 (11th Cir. Jan. 20, 2022) (Scola, J.). A court is required to examine the allegations in the

complaint to see if they are well-pleaded and present a sufficient basis to support a default judgment on the causes of action. *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[2] Only those factual allegations that are well-pleaded are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

## II.    Evidentiary Hearing Testimony

As noted above, the Undersigned held an evidentiary hearing on Plaintiff's amended default judgment motion. At the hearing, Plaintiff presented testimony from Ariel Rodriguez, Worldwide Distributors' vice president. Mr. Rodriguez is a lighting specialist and consultant. He testified that Worldwide Distributors was incorporated in Florida in 2016. At the start of the COVID-19 pandemic, Mr. Rodriguez and his company transitioned from a lighting company to the business of providing personal protective equipment (i.e., COVID test kits, KN95 masks, hand sanitizers, etc.) to municipalities, hospitals, schools, property management companies, and other entities.

Worldwide Distributors was referred to Maven Med by a Florida corporation, BT Global Enterprises ("BT Global"). BT Global is located in Boca Raton and its principal is Brian Traub.

---

[2]    In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

4

Worldwide Distributors' first business deal with Maven Med occurred in February 2021, when Plaintiff purchased 6,000 children's masks from Maven Med for the Baltimore County School Board.

Mr. Traub was the broker in the February 2021 transaction and in the transaction that is the subject of the instant action. Mr. Rodriguez testified that Maven Med had done business in South Florida with other companies but did not elaborate on this testimony.

Worldwide Distributors' second business deal with Maven Med is the subject of this lawsuit:

On September 22, 2022, Worldwide Distributors sent a purchase order (P.O. No. 4830) to Maven Med requesting 37,500 Abbot Binax COVID test kits. [ECF No. 28-2, p. 1]. The purchase order reflected a purchase price of $656,250.00 and $2,900 for the shipping charge. It also included the following note: "All 37,500 kits must reflect expiration date of September 2023." *Id.* (capitalization omitted).

Maven Med sent an invoice to Worldwide Distributors. *Id.* at 2. The invoice was for 37,500 Abbot Binax COVID test kits. *Id.* The total cost of the kits was $656,250.00. There was also an additional $2,900 charge for "logistics from NJ to Baltimore." *Id.* (capitalization omitted).

Mr. Rodriguez testified that Worldwide Distributors did not pay the shipping charge listed in both the purchase order and the invoice because it had made its own arrangements for a truck to pick up the kits from a warehouse in New Jersey. The test

5

kits would then be transported to Baltimore County's property management office in Maryland.

On October 5, 2022, Worldwide Distributors sent a wire transfer from its Florida bank to Maven Med's bank in California in the amount of $656,250.00. *Id.* at 3. Although the money came from Worldwide Distributors' bank account, Mr. Rodriguez testified that Baltimore County contributed approximately $384,375.00 of the $656,250.00 sent to Maven Med.

He also testified that Worldwide Distributors kept Baltimore County apprised of this lawsuit. Mr. Rodriguez told the Court that "Robert" had a "communication" with Baltimore County and that Worldwide Distributors would give Baltimore County its money first. At the hearing, Robert A. Rosenblatt, Worldwide Distributors' counsel, told the Court that "we" had assured Baltimore County that if there was a recovery, Baltimore County would be "first in line" to have the money paid back to them.

Mr. Rodriguez testified that Maven Med received the $656,250.00 and, at some point, Maven Med sent the funds to a Miami attorney, Umberto Bonavita, to facilitate the purchase of the test kits from a vendor. But after several unsuccessful attempts to obtain the test kits, Mr. Bonavita wire transferred the money back to Maven Med.[3] Thus, the

---

[3]     At the evidentiary hearing, Worldwide Distributors' attorney told the Court that he had subpoenaed Mr. Bonavita's records and they showed that approximately $405,000.00 of the money which Mr. Bonavita returned went to California attorney Alex Herrera's account and the remainder went to Pramanik and Sudha Bharadwaj's account.

$656,250.00 went from Plaintiff's bank account in Florida to Maven Med's bank account in California and then from Maven Med's bank account to the account of a South Florida attorney. After Maven Med failed to secure the test kits from the vendor, the attorney returned the funds to California.

Mr. Rodriguez testified that Maven Med (in California) sent numerous emails and text messages and made telephone calls to Worldwide Distributors (in Florida) concerning the purchase of these test kits.

Most of Maven Med's communications were through Sudha Bharadwaj.[4] Mr. Rodriguez testified that Sudha Bharadwaj was listed (in the emails) as Maven Med's Strategic Advisor but that he believed she was the wife of the president of Maven Med (Pramanik Bharadwaj). Mr. Rodriguez also testified that his research indicated that Sudha Bharadwaj was the CEO, that Pramanik Bharadwaj was the registered agent, and that Maven Med operated out of the Bharadwajs' family home in Anaheim, California.

On Thursday, October 6, 2022, Sudha Bharadwaj sent an email advising Worldwide Distributors that the test kits would be available for pick up no later than Monday, October 10, 2022. *Id.* at 15. On Monday, October 10, 2022, Worldwide

---

[4]    The emails also reflect the name Sudha Gupta. No testimony was provided regarding this name.

Distributors received an email from the trucking company notifying it that the warehouse was closed for Yom Kippur.[5]

On Wednesday, October 12, 2022, Sudha Bharadwaj sent an email to Worldwide Distributors confirming that the test kits would be ready for pick up that day in New Jersey. *Id.* at 22. Mr. Rodriguez testified that Maven Med never made the test kits available for pick up as promised.

At approximately 10:00 PM on October 12, 2022, Sudha Bharadwaj sent an email to Worldwide Distributors which included an email forward from a person named "Brandon." *Id.* at 27. Mr. Rodriguez testified that Brandon was Maven Med's vendor who was to procure the test kits.

Brandon's email stated that he was unable to obtain the test kits with a September 2023 expiration date but could obtain test kits with a May 2023 expiration date. Mr. Rodriguez testified that the May 2023 expiration date was not acceptable to Baltimore County.

On October 18, 2022, Joseph Doyle, Worldwide Distributors' president, sent an email to Sudha Bharadwaj requesting the return of the $656,250.00. *Id.* at 31. The

---

[5]    The Undersigned takes judicial notice that Yom Kippur was from sundown on Tuesday, October 4, 2022 to sundown on Wednesday, October 5, 2022. *See Dorman v. Aronofsky*, No. 18-CV-61392, 2020 WL 1902551, at *1 (S.D. Fla. Jan. 2, 2020), report and recommendation adopted sub nom. *Dorman v. BSO Chaplain's Off.*, No. 18-61392-CIV, 2020 WL 613812 (S.D. Fla. Feb. 10, 2020) (taking judicial notice of holiday pursuant to Fed. R. Evid. 201).

following day, Mr. Rodriguez sent an email to Sudha Bharadwaj asking her again to return the $656,250.00. *Id.* at 35. Mr. Rodriguez also testified that there were telephone calls and texts with Pramanik Bharadwaj but did not elaborate on the content of these communications.

Worldwide Distributors did not receive the 37,500 Abbot Binax COVID test kits and Maven Med did not return the $656,250.00.

## III.   Analysis

### a.   Subject-Matter Jurisdiction

"[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment entered." *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), report and recommendation adopted, No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (citing *Nishimatsu*, 515 F.2d at 1206).

Federal courts are courts of limited subject-matter jurisdiction and must be vigilant in ensuring that they have jurisdiction over a case. "[B]ecause a federal court is powerless to act beyond its statutory grant of subject[-]matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject[-]matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). "Courts have an **independent obligation to determine whether subject-matter jurisdiction exists**, even when no party

challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (emphasis added); *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("Indeed, it is well settled that a federal court is obligated to inquire into subject[-]matter jurisdiction *sua sponte* whenever it may be lacking.").

Moreover, the Court always has jurisdiction to determine whether it has jurisdiction over a matter. *United States v. Ruiz,* 536 U.S. 622, 628 (2002) ("[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction.").

In the instant case, the Complaint alleges that "[t]his Honorable Court has jurisdiction under 28 USC [sic] Section 1332 as the parties have a diversity of different states." [ECF No. 1, ¶ 4]. Diversity jurisdiction is satisfied "where the matter in controversy exceeds the sum or value of $75,000[.00], exclusive of interest and costs" and the litigants are "citizens of different States." 28 U.S.C. § 1332(a)(1).

The jurisdictional amount is satisfied here because the Complaint alleges that the amount at issue is $656,250.00. [ECF No. 1, ¶¶ 15-16, 27, 32]. Nonetheless, the citizenship of the parties has not been adequately pled.

"A corporation is a citizen of both its state of incorporation and the state where it has its principal place of business." *Yeh Ho v. Merrill Lynch Pierce Fenner & Smith Inc.*, No. 22-11521, 2023 WL 2017380, at *1 (11th Cir. Feb. 15, 2023) (citing 28 U.S.C. § 1332(c)(1)). The Complaint alleges that Plaintiff is a Florida corporation and that Defendant is a

California corporation. [ECF No. 1, ¶¶ 2-3]. However, there are no allegations concerning each corporation's principal place of business.

In *Yeh Ho*, the Eleventh Circuit determined that "[t]he second amended complaint failed to establish diversity of citizenship because it failed to allege [the corporate defendant's] principal place of business." *Id.* at *2. Similarly here, the Complaint does not allege the principal places of business for both Plaintiff and Defendant. The Complaint thus fails to adequately plead complete diversity of citizenship between the parties. *Martinez v. Netflix, Inc.*, No. 23-10895, 2023 WL 3746377 (11th Cir. June 1, 2023) (noting that a proposed amended complaint was inadequate because it did not sufficiently allege a corporate defendant's principal place of business and remanding appeal to the district court for the limited purpose of determining the citizenship of the parties to establish whether diversity jurisdiction existed in the first place).

### b. Personal Jurisdiction

A court must also have personal jurisdiction over a defendant. "A judgment rendered in the absence of personal jurisdiction is void and without legal effect." *Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) (citng *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). Thus, "[a] defendant may defeat subsequent enforcement of a default judgment in another forum by demonstrating that the judgment issued from a court lacking personal jurisdiction even if the court entering the default determined that it had personal jurisdiction over the defendant." *Rash v. Rash*,

173 F.3d 1376, 1381 (11th Cir. 1999). For this reason, "when deciding a motion for default judgment, a court has an affirmative duty to evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Strange*, 2021 WL 8945480.

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citation omitted). The Undersigned will first address service of process.

### i.      Service of Process

Service of process is a jurisdictional requirement. "Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment against the [defendant]." *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022).

Courts have declined to enter default judgments where the movant has failed to show that service of process has been effectuated on the party against whom a default

judgment is sought.[6] Moreover, a default judgment against a defendant who is not properly served may be subject to vacatur. *See, e.g., Morant v. Ritecare Med. Prod., LLC*, No. 13-61205-CIV, 2014 WL 12607016, at *1 (S.D. Fla. Oct. 29, 2014) (Scola, J.) (vacating default and default judgment against a defendant who was not properly served with service of process).

Here, Plaintiff filed returns of service and amended returns of service with the Court. *See* [ECF Nos. 7 (reflecting a service date of November 12, 2022 at 7:17 PM on Sudha Bharadwaj); 11 (same); 27 (attaching an Amended Return of Service (reflecting a service date of November 22, 2022 at 8:55 PM on Pramanik Bharadwaj)].

Additionally, at the evidentiary hearing, Plaintiff introduced a new legal argument: that a California attorney (Alex Herrera) representing Defendant had accepted service on behalf of his client in an email. The Undersigned admitted into evidence a copy of that email. *See* Plaintiff's Exhibit 20. Because this was new information (not disclosed in any earlier filing), the Undersigned instructed Plaintiff to brief the issue of waiver of

---

[6]     *See, e.g., Castillo v. Vance*, No. 20-81139-CIV, 2020 WL 13379380, at *2 (S.D. Fla. Oct. 5, 2020) ("[B]ecause [the] [p]laintiff has failed to properly execute service of process, she has not fulfilled the first predicate necessary to move for default judgment."); *Fameflynet, Inc. v. Oxamedia Corp.*, No. 17-80879-CIV, 2018 WL 8244525, at *3 (S.D. Fla. May 1, 2018) (denying without prejudice motion for default judgment where requirements of service of process had not been met); *see also Abele v. City of Brooksville, Fla.*, 273 F. App'x 809, 811 (11th Cir. 2008) ("In the light of [the] [p]laintiff's failure to submit adequate proof of service of process under Fed. R. Civ. P. 4 and Florida law, the district court committed no error when it denied [the] [p]laintiff's motion for default judgment and dismissed his complaint without prejudice.").

13

service of process/acceptance of service by an attorney. *See* Post-Evidentiary Hearing

Administrative Order [ECF No. 25].

In its subsequently filed, post-hearing memorandum, Plaintiff represented to the

Court that "[it] [was] not relying on the emails sent by MAVEN's California attorney,

Alex Herrera[,]" to establish service of process. [ECF No. 30, p. 3]. Therefore, the

discussion below will be limited to Federal Rule of Civil Procedure 4 and the applicable

California service statute. It will not address attorney Herrera's purported acceptance or

waiver (on behalf of his client) of service of process.

Rule 4(h) states, in pertinent part, that:

[A] domestic or foreign corporation, or a partnership or other
unincorporated association that is subject to suit under a common name,
must be served:

(1) in a judicial district of the United States:

**(A) in the manner prescribed by Rule 4(e)(1)
for serving an individual**; or

(B) by delivering a copy of the summons and of
the complaint to an officer, a managing or
general agent, or any other agent authorized by
appointment or by law to receive service of
process and--if the agent is one authorized by
statute and the statute so requires--by also
mailing a copy of each to the defendant[.]

Fed. R. Civ. P. 4(h)(1)(A)-(B) (emphasis added).

Rule 4(e)(1) provides, in part, that: "an individual . . . may be served in a judicial

district of the United States by . . . **following state law for serving a summons in an**

**action brought in courts of general jurisdiction** in the state where the district court is located or **where service is made**[.]" Fed. R. Civ. P. 4(e)(1) (emphasis added); *see also Stem Holdings, Inc. v. Blake Inv. Grp., Inc.*, No. 9:22-CV-80507, 2022 WL 18465748, at *1 n.1 (S.D. Fla. Dec. 5, 2022) ("Federal Rule of Civil Procedure 4 provides that service can be effectuated upon a corporation by serving a summons in accordance with the state law of the state in which service is made." (citing Fed. R. Civ. P. 4(c)(e)(1), (h)(1)(A)).

Plaintiff's post-hearing memorandum cites Cal. Code of Civ. P. § 416.10, as the applicable California service statute. [ECF No. 30, p. 4]. Section 416.10 states that:

> **A summons may be served on a corporation by delivering a copy of the summons and the complaint by any of the following methods**:
>
> **(a) To the person designated as agent for service of process as provided by any provision in Section 202, 1502, 2105, or 2107 of the Corporations Code** (or Sections 3301 to 3303, inclusive, or Sections 6500 to 6504, inclusive, of the Corporations Code, as in effect on December 31, 1976, with respect to corporations to which they remain applicable).
>
> (b) **To the president, chief executive officer**, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, **or a person authorized by the corporation to receive service of process**.
>
> (c) If the corporation is a bank, to a cashier or assistant cashier or to a person specified in subdivision (a) or (b).
>
> (d) If authorized by any provision in Section 1701, 1702, 2110, or 2111 of the Corporations Code (or Sections 3301 to 3303, inclusive, or Sections 6500 to 6504, inclusive, of the Corporations Code, as in effect on December 31, 1976, with respect to corporations to which they remain applicable), as provided by that provision.

Cal. Civ. Proc. Code § 416.10 (emphasis added).

15

Plaintiff has attached to its post-hearing memorandum a printout from the OpenCorporates website, a non-government website. [ECF No. 30, p. 19]. The printout purports to contain certain corporate facts about Maven Med, including the date of incorporation as well as the name and address of its agent. However, Plaintiff has not provided the Court with any information about the OpenCorporates website. Plaintiff has not asked the Court to take judicial notice and has not submitted any legal authority which would support the taking of judicial notice of the information from this website.

At least one federal court has declined to take judicial notice of the OpenCorporates website. *See Early Warning Servs., LLC v. Grecia*, No. CV 21-1050, 2021 WL 1264029, at *7 (E.D. Pa. Apr. 6, 2021) ("Mr. Grecia argues Early Warning has a place of business in Austin, Texas and attaches a document from the OpenCorporates website, a public website which is not a government or otherwise official website of which we may take judicial notice." (footnote and quotation marks omitted)). Therefore, the Court should not rely on the OpenCorporates printout filed by Plaintiff.

Nonetheless, the OpenCorporates printout does list the website address for the California Secretary of State (https://bizfileonline.sos.ca.gov/). The California Secretary of State's website lists Pramanik Bharadwaj as Maven Med's agent with 844 S. Bramble Way Anaheim, CA 92808 as his address. Corporations Search for Maven Med, Inc., Cal. Sec'y of State, https://bizfileonline.sos.ca.gov/search/business (last visited June 14, 2023).

Federal Rule of Evidence 201(b) provides for taking judicial notice of facts not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). Unlike the OpenCorporates website, the Court may take judicial notice of information from the California Secretary of State's website. *See Carlisle v. Nat'l Com. Servs., Inc.*, No. 1:14-CV-515-TWT, 2015 WL 4092817, at *4 (N.D. Ga. July 7, 2015), aff'd, 722 F. App'x 864 (11th Cir. 2018) ("This Court takes Judicial Notice of the California Secretary of State's website which indicates that NCS' address is 6644 Valjean Ave., Suite 100, Van Nuys, California 91406, and that NCS' agent for service of process is Zoran Jovanovski, and that Jovanovski's address is the same as that indicated for NCS."); *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 937-938 (C.D. Cal. 2011) (taking judicial notice of record searches from the California Secretary of State website).

Plaintiff's most-recently filed return of service [ECF No. 27] states that on November 22, 2022 at 8:55 p.m., process server Nicole Cervantes served a copy of the summons and Complaint on Pramanik Bharadwaj as registered agent for Maven Med, Inc. at the address of 844 S. Bramble Way, Anaheim, CA 92808.

In response to the Undersigned's inquiries about certain inconsistencies concerning the Miami business address and the last name of the process server,[7] Plaintiff filed an affidavit from Ms. Cervantes, attesting:

> 10.     On November 22nd, 2022 [she] returned to 844 Bramble Way, Anaheim, California to serve summons and complaint on Pramanik Bahardwadj. I was greeted at the door by a gentleman. [She] asked him if he was Pramanik Bahardwadj[.] He denied being Pramanik Bahardwadj. [Ms. Cervantes] had a Facebook photograph of Pramanik Bahardwadj. The Facebook photograph [she] had matched the face of the gentleman who answered the door.

> 11.     After being confronted with the photograph, the gentleman conceded he has [sic] Pramanik Bahardwadj and accepted the summons and complaint.

[ECF No. 30, p. 22 (Bharadwaj misspelled in original)].

Here, Maven Med was properly served process through personal service of the summons and Complaint on Pramanik Bharadwaj, its registered agent. Mr. Bharadwaj is listed with the California Secretary of State as Maven Med's agent for service of process at the 844 Bramble Way, Anaheim, California address, where service of process was

---

[7]     The Return of Service contained a signature line for the process server and listed her "Process Server #" (with no specified state). The following contact information was listed below the signature block: Lighting Legal Couriers, 9280 SW 64 Street, Miami, Florida 33173, and a local phone number. Additionally, an internet search for the process server number returned results for a Nicole Lopez. Ms. Cervantes' affidavit attests that she is a California resident, she traveled to Anaheim to effectuate service in this case, and that Lopez is her maiden name. [ECF No. 30, p. 21].

Plaintiff's post-hearing submissions (including Ms. Cervantes' affidavit) have allayed the Undersigned's concerns about the information in the returns of service filed with the Court.

made. *See Rivers v. Fox Broad. Co. Inc.*, No. LACV1907554JAKPJWX, 2021 WL 8892799, at

*5 (C.D. Cal. Oct. 22, 2021) ("Under California law, service on a corporation may be

effected by delivery of the summons and complaint to 'the person designated as agent

for service of process' or 'the president, chief executive officer, or other head of the

corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant

treasurer, a controller or chief financial officer, a general manager, or a person authorized

by the corporation to receive service of process.'" (quoting Cal. Code Civ. Proc. §

416.10)).[8] Thus,      Plaintiff has shown that Maven Med was properly served in this

action.

---

[8]      Plaintiff argues that service of process was also effectuated on November 12, 2022, when Ms. Cervantes personally delivered a copy of the summons and Complaint to Sudha Bharadwaj because Sudha Bharadwaj "is the president and CEO" of Maven Med. [ECF No. 30, p. 5]. But, in Plaintiff's post-hearing submissions, the only source for Sudha Bharadwaj's corporate title is the printout from the OpenCorporates website, which lists her as CEO. It is possible that other parts of the record contain this information and are from a source the Court may rely on, but Plaintiff did not provide a record citation for Sudha Bharadwaj's corporate title at Maven Med.

Although Mr. Rodriguez provided testimony on this topic at the evidentiary hearing, Plaintiff did not cite to his testimony in its post-hearing memorandum. Moreover, Mr. Rodriguez's testimony was that Sudha Bharadwaj was the CEO and wife of the president (Pramanik Bharadwaj) of Maven Med. Thus, part of his testimony contradicts the representation in Plaintiff's post-hearing memorandum that "Sudha Bahradwadj . . . **is the president** and CEO" of Maven Med. [ECF No. 30, p. 5 (emphasis added)].

In any event, service of process through Maven Med's agent, Pramanik Bharadwaj, is sufficient under California law for the reasons stated herein. Therefore, it is not necessary for the Court to address whether Plaintiff also effectuated service of process on Maven Med through Sudha Bharadwaj.

### ii.        Amenability to Jurisdiction

"The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of **alleging in the complaint** sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (emphasis added); *see also Warner Bros. Ent. Inc. v. Phillips*, No. 6:14-CV-1294-ORL-37, 2015 WL 4590519, at *3 (M.D. Fla. July 28, 2015) ("Even in the default judgment context, as a threshold matter, the plaintiff bears the **burden of pleading sufficient facts** to make out a *prima facie* case of personal jurisdiction over non-resident defendants." (emphasis added)).

Here, the Complaint alleges that Maven Med is a California corporation. [ECF No. 1, ¶ 3]. It also alleges -- in the section concerning venue -- that Maven Med "does business in the Southern District of Florida" and that "*Plaintiff* . . . wired funds in the amount of $656,250.00 from their [sic] bank account at Truist Bank, Miami-Dade County branch - 8540711 to MAVEN's beneficiary bank, Wells Fargo, located in California, on October 5, 2022." *Id.* at ¶¶ 5-6 (emphasis added). There are no other allegations concerning *Maven Med's* connection to Florida in the Complaint.

To be sure, "a defaulted defendant is deemed to have admitted the movant's well-pleaded allegations of fact[.]" *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1339 (11th Cir. 2014). But a defaulted defendant "is not charged with having admitted 'facts that are not well-pleaded or . . . conclusions of law.'" *Id.* (quoting *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005)).

The Complaint's allegation that Maven Med "does business in the Southern District of Florida" is too conclusory to establish personal jurisdiction under Florida law. *See, e.g., Nelson v. Atlas Apartment Homes*, LLC, No. 620CV879ORL78LRH, 2020 WL 10456790, at *3 (M.D. Fla. Aug. 10, 2020) ("Plaintiff has not established that his conclusory assertion—'Defendant does business and Plaintiff worked for Defendant in this District'—is sufficient, without further detail, to establish personal jurisdiction under Florida law."); *Am. Registry, LLC v. Hanaw*, No. 2:13-CV-352-FTM-29CM, 2014 WL 12606501, at *8 (M.D. Fla. July 16, 2014) ("Plaintiff also alleges that Levy and Showmark Media 'conduct business within this judicial district.' This allegation is conclusory and cannot serve as the basis for personal jurisdiction." (citation to the record omitted)); *National Air Cargo Group, Inc. v. Ups Worldwide Forwarding, Inc.*, No. 22-23429-CIV, 2023 WL 3778243, at *5 (S.D. Fla. Mar. 2, 2023) ("The allegation that [the] [d]efendant 'conducts business in Palm Beach County, Florida' is vague and conclusory and says nothing about whether Defendant 'is engaged in substantial and not isolated activity within' Florida." (emphasis omitted)).

Because Worldwide Distributors' Complaint contains no personal jurisdiction allegations, the Undersigned instructed Plaintiff, in a pre-hearing paperless order, "to address whether its failure to plead any personal jurisdiction allegations subjects its Complaint to dismissal and whether the Complaint's conclusory allegation (raised with respect to venue, not personal jurisdiction) that 'Defendant MAVEN does business in the Southern District of Florida,' [was] sufficient to confer personal jurisdiction over Defendant." [ECF No. 22]. The Post-Hearing Administrative Order [ECF No. 25] also tasked Plaintiff with addressing the topic of personal jurisdiction. [ECF No. 25, p. 4].

In its post-hearing memorandum, Plaintiff argues that it may cure the Complaint's failure to allege personal jurisdiction pursuant to Fed. R. Civ. P. 15(b). [ECF No. 30, pp. 9-10].

Rule 15(b) states, as follows:

**(b) Amendments During and After Trial.**

> **(1) Based on an Objection at Trial.** If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

> **(2) For Issues Tried by Consent.** When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the

> evidence and to raise an unpleaded issue. But failure to
> amend does not affect the result of the trial of that issue.

Fed. R. Civ. P. 15(b)(1).

Plaintiff notes that "[n]otwithstanding the reference in Rule 15(b)(1) to a 'trial',

pleadings may be deemed amended to conform to the evidence at an evidentiary hearing

before a judge." [ECF No. 30, p. 9]. The cases cited by Plaintiff, however, are not helpful

because none of them applied Rule 15(b) in the context of a default judgment motion.

Rather, in each of the cases cited by Plaintiff, the defendant(s) actively participated in the

litigation.[9] Moreover, Plaintiff has provided no legal authority for its contention that "[b]y

Plaintiff's [sic] default, MAVEN has provided the implied consent" to amend the

pleadings to conform with the evidence. *Id.*[10] Thus, Plaintiff has not met its burden of

---

[9]     *See* [ECF No. 30, pp. 9-10 (citing *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022
(11th Cir. 2001) (appeal from an order granting a motion to dismiss); *Gov't Emps. Ret. Sys.
of Virgin Islands v. Gov't of Virgin Islands*, 995 F.3d 66, 71 (3d Cir. 2021) (concerning the
enforcement of a consent judgment); *House of Flavors, Inc. v. TFG Michigan, L.P.*, 643 F.3d
35, 38 (1st Cir. 2011) (appeal of a judgment following a three-day bench trial); *People for
Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 362 (4th Cir. 2001) (cross-appeal
concerning orders on motions for summary judgment and attorney's fees and costs);
*Kehoe Component Sales Inc. v. Best Lighting Prod., Inc.*, 796 F.3d 576, 580 (6th Cir. 2015)
(appeal following a bench trial)].

[10]    If Plaintiff's contention -- that a defaulted defendant provides implied consent --
was legally correct, then there would be no need for "'the district court [to] ensure that
the well-pleaded allegations of the complaint . . . actually state a cause of action and that
there is a substantive, sufficient basis in the pleadings for the particular relief sought'"
before granting default judgment. *N Cherry Elec. (PTY) LTD v. Ferreira*, No. 19-CV-23382,
2020 WL 905224, at *2 (S.D. Fla. Feb. 25, 2020) (quoting *Tyco Fire & Sec., LLC v. Alcocer*, 218
F. App'x 860, 863 (11th Cir. 2007)). A plaintiff with a defective complaint could simply
present new causes of action and legal theories at an evidentiary hearing and, so long as

demonstrating that it may cure its failure to allege personal jurisdiction in the Complaint through evidentiary submissions (including testimony and documentary evidence), as opposed to filing an amended complaint.

In the interest of judicial economy and to avoid a further round of briefing, the Undersigned will next address whether -- assuming *arguendo*, Plaintiff could cure the failure to plead personal jurisdiction in the Complaint through extrinsic evidence -- the record (including Mr. Rodriguez's testimony and Plaintiff's exhibits) reflects that Maven Med, a non-resident defendant, is amenable to this Court's jurisdiction.

In addressing this issue, a court generally engages in a two-part inquiry:

> First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied. [*Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir.1996)]. If the requirements of the long-arm statute are satisfied, then the court must inquire as to, (1) whether defendant has established sufficient "minimum contacts" with the state of Florida; and (2) whether the exercise of this jurisdiction over defendant would offend "traditional notions of fair play and substantial justice." *Id.* at 630-31 (quoting *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

*Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).

## 1.  Florida's Long-Arm Statute

Florida's long-arm statute is found in section 48.193 of the Florida Statutes. It governs both specific and general jurisdiction. Section 48.193(1) addresses specific

---

they were supported by the evidence, move to conform the pleadings based on the purported "consent" of the defaulted (non-appearing) defendant.

jurisdiction resulting from a defendant's acts arising from or relating to that defendant's contacts with Florida. Section 48.193(2) addresses general jurisdiction based on the defendant's contacts with Florida, regardless of whether or not the contacts are related to the lawsuit. Florida's long-arm statute is strictly construed and "[the] Court is required to apply the statute 'as would the Florida Supreme Court.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (quoting *United Techs. Corp.*, 556 F.3d at 1274).

In its post-hearing memorandum, Plaintiff contends that numerous provisions of the Florida long-arm statute confer jurisdiction over Maven Med and then purports to quote the statute, as follows:

(a). any person whether or not a citizen of this state who personally or through an agent does any of acts of a business venture in this state.

(b). by committing a tortious act within this state.

(f). causing an injury to persons or property within this state arising out on an act or omission by the defendant outside of this state, if at or about the time of the injury the defendant was engaged in the solicitation or service activities within the state.

(g).[ ] (1) breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

(2) a defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly intrastate, interstate or otherwise subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

[ECF No. 30, pp. 10-11; *id.* at 11 ("All of the above portions of 48.193 provide jurisdiction over MAVEN by this Court.")].

But Plaintiff appears to be quoting an older version of Fla. Stat. § 48.193 because the current version of the statute does not match verbatim the language quoted by Plaintiff. For instance, section (1)(a) begins with "[a] person" not "any person" and there is no longer a subsection (f) or (g), though the language quoted by Plaintiff appears to in substance remain part of the statute.

The current version of section 48.193 reads, in pertinent part, as follows:

(1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

> 1. **Operating, conducting, engaging in, or carrying on a business or business venture in this state** or having an office or agency in this state.

> 2. **Committing a tortious act within this state**.

> ***

> 6. **Causing injury to persons or property within this state arising out of an act or omission by the defendant** outside this state, if, at or about the time of the injury, either:

>> a. The **defendant was engaged in solicitation or service activities within this state**; or

>> ***

> 7. **Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state**.

> ***

(2) A defendant who is engaged in **substantial and not isolated activity within this state**, whether such activity is wholly interstate, intrastate, or

otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193(1)(a), (2) (emphasis added).

In its post-hearing memorandum, Plaintiff does not meaningfully address the applicable provisions of the Florida long-arm statute or discuss which facts pertain to which sections of the statute. Instead, Plaintiff (mis)quotes the statute and then devotes the remainder of its time on this topic to discussing due process, minimum contacts, and traditional notions of fair play and substantial justice. [ECF No. 30, pp. 10-15]. But as noted above, determining whether a non-resident defendant is amenable to jurisdiction is a **two-step** inquiry. *Future Tech. Today, Inc.*, 218 F.3d at 1249. Plaintiff must first show that the Florida long-arm statute applies and then show that the Court's exercise of personal jurisdiction over the non-resident defendant comports with the Fourteenth Amendment's due process requirements. *Id.*

It is Plaintiff's job, not the Court's, to show which facts support which section(s) of the Florida long-arm statute. *See Garcia v. Thor Motor Coach, Inc.*, No. 16-20230-CIV, 2017 WL 7792717, at *7 (S.D. Fla. July 5, 2017), report and recommendation adopted, No. 16-20230-CIV, 2017 WL 7798661 (S.D. Fla. Oct. 20, 2017) ("[I]t is not the Undersigned's role to make legal arguments for a party or to sort out how unverified allegations in response filings could apply to certain sections of Florida's long-arm statute.").

In any event, the Undersigned will undertake an analysis of the relevant provisions of the Florida long-arm statute.

27

### (a)     General Jurisdiction

The Undersigned will first address general jurisdiction because Plaintiff seeks to invoke this provision. General jurisdiction "arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated." *Stubbs*, 447 F.3d at 1360, n. 3; Fla. Stat. § 48.193(2). The Florida long-arm statute confers general jurisdiction over "[a] defendant who is engaged in **substantial and not isolated activity** within this state[.]" Fla. Stat. § 48.193(2) (emphasis added).

"Florida courts construe 'substantial and not isolated activity' to mean '**continuous and systematic business contact**'" with the state. *Hinkle v. Cont'l Motors, Inc.*, 268 F. Supp. 3d 1312, 1326 (M.D. Fla. 2017), judgment entered, No. 8:16-CV-2966-T-36MAP, 2018 WL 10096593 (M.D. Fla. Jan. 8, 2018), and aff'd sub nom. *Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545 (11th Cir. 2019) (citing *Caiazzo v. American Royal Arts Corp.*, 73 So.3d 245, 250 (Fla. 4th DCA 2011)) (emphasis added).

Plaintiff asserts that:

[Ariel Rodriguez] testified that numerous calls came from MAVEN in California. Other evidence submitted included testimony that MAVEN had done business in Florida with [Plaintiff] on a $21,000 transaction in February of 2021 and that MAVEN had done other business in Florida through their [sic] broker, Brian Traub, based in Boca Raton, Florida.

28

[ECF No. 30, p. 9]. But Plaintiff has not cited any legal authority to support the argument that these limited contacts with Florida are sufficient to conclude that general-type personal jurisdiction exists over Maven Med.

In the section of its post-hearing briefing discussing minimum contacts, Plaintiff notes that "in the instant case MAVEN sent its invoice to Plaintiff. Sent numerous emails and had several telephone calls with Plaintiff" and for this reason "the facts demonstrate that MAVEN's connections with Florida are not random, fortuitous or attenuated." [ECF No. 30, p. 12]; *see also id.* at pp. 14-15 ("MAVEN is subject to this court's jurisdiction through the Florida long[-]arm statute, through their emails, invoices sent, and telephone calls with [Plaintiff] in Florida.").

In this same section, Plaintiff argues that: "By receiving $656,250.00 from [Plaintiff] and not providing the 37,500 Covid test kits, then ignoring the demands for the return of the $656,250.00 quite clearly MAVEN could anticipate being haled into a Florida court based upon their [sic] egregious conduct in unjustly enriching themselves [sic] by failing to return the funds." *Id.* at 13.

To the extent Plaintiff is seeking to rely on the above facts, the Undersigned finds they are insufficient to support a finding that Maven Med is subject to general jurisdiction under the Florida long-arm statute.

The Eleventh Circuit has stated that "[a] foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely

approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015). Plaintiff has not presented any legal authority to support a finding that Maven Med's two business dealings with Plaintiff (in February 2021 and in September/October 2022), a smattering of emails, telephone calls, and text messages to this state, and Mr. Rodriguez's conclusory and unelaborated testimony that Maven Med had done business in Florida with other companies constitutes "continuous and systematic business contacts" with Florida such that Defendant is subject to general jurisdiction in this state. As this Court has observed,

> in order for a defendant to fall within Florida's general jurisdiction, a defendant's contacts "**must be so extensive to be tantamount to [the] defendant being constructively present in the state** to such a degree that it would be fundamentally fair to require it to answer in the forum state's courts in any litigation arising out of any transaction or occurrence taking place anywhere in the world."

*Hebert v. Davinci Compass, Inc.*, No. 17-60017-CIV, 2017 WL 7794275, at *3 (S.D. Fla. Mar. 21, 2017) (quoting E*xhibit Icons, LLC v. XP Companies, LLC*, 609 F.Supp.2d 1282, 1295 (S.D. Fla. 2009) (emphasis added; alteration in original)).

Accordingly, Plaintiff has failed to show that general jurisdiction applies in this case.

### (b)    Specific Jurisdiction

"[S]pecific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint[.]" *Stubbs v. Wyndham Nassau Resort*

*& Crystal Palace Casino*, 447 F.3d 1357, 1360 n. 3 (11th Cir. 2006) (internal citation omitted);

Fla. Stat. § 48.193(1)(a). "If the forum's long-arm statute provides jurisdiction over one

claim, the district court has personal jurisdiction over the entire case so long as the claims

arose from the same jurisdiction generating event." *Brennan v. Roman Cath. Diocese of

Syracuse New York, Inc.*, 322 F. App'x 852, 854 (11th Cir. 2009) (citing *Cronin v. Washington

Nat'l Ins. Co.*, 980 F.2d 663, 671 (11th Cir.1993)).

"In Florida, before a court addresses the question of whether specific jurisdiction

exists under the long-arm statute, the court must determine 'whether the allegations of

the complaint state a cause of action.'" *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*,

598 F.3d 802, 808 (11th Cir. 2010) (*Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002)

(footnote omitted)).

As noted above, Plaintiff has alleged three causes of action: breach of contract,

conversion, and unjust enrichment. To determine whether Plaintiff has stated a claim as

to each count, the Court must first identify and apply the substantive law governing

Plaintiff's claims. The Undersigned asked Plaintiff to engage in a choice of law analysis

to determine which state law applies to each of its common law claims. As discussed in

more detail below, Plaintiff did not do so.

To avoid another round of briefing, the Undersigned engaged in a choice of law

analysis *sua sponte* in section c of this Report and Recommendations below. For the

reasons discussed in section c, California law applies to Plaintiff's breach of contract and

31

unjust enrichment claims. Moreover, because Plaintiff has failed to state a cause of action for conversion, it is unnecessary to engage in a choice of law analysis as to that claim.

### Operating, Conducting, Engaging in, or Carrying on a Business/Business Venture in Florida

Section 48.193(1)(a)(1) of the Florida long-arm statute provides that a person or entity submits to the jurisdiction of this state by "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1). "In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (quoting *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000)).

Courts consider several relevant (though not dispositive) factors: "(1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue obtained from those clients." *Shores Glob., LLC v. Njord's Ark A/S*, No. 21-CV-20623, 2023 WL 2838078, at *14 (S.D. Fla. Feb. 3, 2023), report and recommendation adopted, No. 21-20623-CIV, 2023 WL 2642691 (S.D. Fla. Mar. 27, 2023) (citing *Horizon Aggressive Growth, L.P.*, 421 F.3d at 1167). Plaintiff has not presented any evidence that

Maven Med has or operates a Florida office or has a license to do business in Florida. Likewise, the number of Florida clients served by Maven Med and what percentage of overall revenue these Florida clients bring to Maven Med is unknown.

Here, Plaintiff presented Mr. Rodriguez's conclusory testimony that Maven Med has done business in Florida with other companies. Mr. Rodriguez also testified to Maven Med having engaged in two business deals with Plaintiff in February 2021 and September/October 2022. The Court cannot conclude from these threadbare facts that Maven Med's business activities, considered collectively, show a general course of business activity in Florida for pecuniary gain.

In short, Plaintiff fails to point to sufficient facts to subject Maven Med to specific jurisdiction under § 48.193(1)(a)(1).

### Committing a Tortious Act in Florida

Section 48.193(1)(a)(2) confers specific jurisdiction over persons or entities who "[c]omit[ ] a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). "To qualify as a 'tortious act,' the defendant must commit a tort as defined by Florida law." *Valle v. 3M Co.*, No. 3:22CV17250-MCR-HTC, 2022 WL 17853209, at *3 (N.D. Fla. Dec. 22, 2022).

The only tort claim alleged in the Complaint is conversion. But, as discussed in section c, Plaintiff's Complaint has failed to state a cause of action for conversion. Therefore, the Complaint does not allege a tort claim and thus Plaintiff cannot rely on this section of the Florida long-arm statute to confer specific jurisdiction over Maven Med.

33

**Causing Injury in Florida Through Solicitation or Service Activities in Florida**

Section 48.193(1)(a)(6)(a) provides that a defendant submits to the jurisdiction of this state by "[c]ausing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury . . . [t]he defendant was engaged in solicitation or service activities within this state[.]" Fla. Stat. § 48.193(1)(a)(6)(a).

Plaintiff fails to establish personal jurisdiction under section 48.193(1)(a)(6)(a). Facts reflecting Maven Med's solicitation or service activities in Florida are, at best, scant. Moreover, the types of injuries contemplated by section 48.193(1)(a)(6) are personal injuries or property damage.

A complaint which "only alleges economic injuries and does not allege injuries to a person or property" does not establish specific jurisdiction under section 48.193(1)(a)(6). *BGX E-Health LLC v. Masters*, No. 6:21-CV-1022-WWB-LHP, 2022 WL 9964905, at *6 (M.D. Fla. Oct. 17, 2022) ("'It is well settled that allegations of economic injury alone do not establish the type of injury to persons or property within Florida required to establish personal jurisdiction pursuant to Section 48.193(1)(a)(6).'" (quoting *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1216 n.7 (S.D. Fla. 2017))); *see also Island Wifi Ltd., LLC v. AT&T Mobility Nat'l Accts. LLC*, No. 1:20-CV-23741-WPD, 2021 WL 210536, at *4 (S.D. Fla. Jan. 19, 2021) ("Economic losses, however, are insufficient under this prong; rather, personal

34

injury or physical property damage is required." (citing *Brunner v. Texas A&M Univ. 12th Man Found.*, No. 15-60581-CIV, 2015 WL 13650035, at *4 (S.D. Fla. June 23, 2015))).

Because Plaintiff does not point to any personal injury or property damage stemming from Maven Med's purported solicitation or service activities in Florida, it cannot rely on section 48.193(1)(a)(6) to establish specific jurisdiction.

**Failing to Perform Acts Required by a Contract to Be Performed in Florida**

Section 48.193(1)(a)(7) confers specific jurisdiction over persons or entities who "[b]reach[ ] a contract in this state by failing to perform acts **required by the contract to be performed in this state**." Fla. Stat. § 48.193(1)(a)(7) (emphasis added).

"Under section 48.193(1)(a)(7), . . . the contract upon which the claim is based **must require performance within the state**, though it 'need not require performance exclusively and only in the State of Florida.'" *Island Wifi Ltd., LLC v. AT&T Mobility Nat'l Accts. LLC*, No. 1:20-CV-23741-WPD, 2021 WL 210536, at *4 (S.D. Fla. Jan. 19, 2021) (quoting *For Life Prod., LLC v. Rust-Oleum Corp.*, 440 F. Supp. 3d 1364, 1367–68 (S.D. Fla. 2020) (emphasis added)).

Here, Plaintiff has not pointed to any part of the parties' agreement which required Maven Med's performance in Florida. To the contrary, the exhibits to the Complaint and the evidence presented at the evidentiary hearing reflect that the parties' agreement required Maven Med to perform in **New Jersey** by delivering the test kits to a warehouse

located in that state. Therefore, Plaintiff fails to establish this Court's personal jurisdiction over Maven Med under 48.193(1)(a)(7).

### 2.  Due Process

For the reasons discussed above, the Court lacks both general and specific personal jurisdiction under the Florida long-arm statute. Because Plaintiff failed to meet its burden of showing that the requirements of Florida's long-arm statute were met, it is not necessary to address due process considerations. *See Ferenchak v. Zormati*, 572 F. Supp. 3d 1284, 1295 (S.D. Fla. 2021) ("Because there are no grounds for specific jurisdiction under Fla. Stat. § 48.193(1)(A)(1), the Court once again foregoes the Due Process analysis.").

Plaintiff's failure to satisfy subject matter jurisdiction and the Florida long-arm statute dooms its default judgment motion and compels the without-prejudice dismissal of its Complaint [ECF No. 1]. Nonetheless, for the sake of completeness (and because some of the determinations below impact the Court's long-arm statute analysis), the Undersigned will address liability. The Undersigned will also discuss damages, in the event that Plaintiff files an amended complaint.[11]

### c.    Liability

---

[11]     Plaintiff should file an amended complaint *only* if it can satisfy the requirements of the Florida long-arm statute and due process. It may well be that Plaintiff will need to seek redress from the district court in California.

"The entry of a default is not 'an absolute confession by the defendant of his liability and of the plaintiff's right to recover,' but is instead merely 'an admission of the facts cited in the [c]omplaint, which by themselves may or may not be sufficient to establish a defendant's liability.'" *Sears v. Thomas*, No. 16-14500-CIV, 2018 WL 11255574, at *2 (S.D. Fla. Mar. 14, 2018) (quoting *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F.Supp.2d 1353, 1357 (S.D. Ga. 2004)); *see also Intelsat Corp. v. Multivision TV LLC*, No. 10-21982-CIV, 2010 WL 5437261, at *2 (S.D. Fla. Dec. 27, 2010) ("A default judgment cannot rest on a complaint that fails to state a claim."). "Therefore, before granting default judgment, 'the district court must ensure that the well-pleaded allegations of the complaint . . . actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought.'" *N Cherry Elec. (PTY) LTD v. Ferreira*, No. 19-CV-23382, 2020 WL 905224, at *2 (S.D. Fla. Feb. 25, 2020) (quoting *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007)).

### i.       Applicable Law

In this action, Plaintiff (a Florida corporation) wired money to Defendant (a California corporation) for the purchase of 37,500 COVID test kits. The product was to be available for pick-up at a warehouse in New Jersey. Thus, at the outset, the Court must determine which state laws to apply to Plaintiff's common law causes of action.

The Undersigned directed Plaintiff to address which law governed its causes of action in two separate Orders. [ECF Nos. 22; 25]. In its post-hearing memorandum,

Plaintiff *states* that Florida law applies to all causes of action alleged in the Complaint and to the issue of damages "based upon the fact that Florida's Long[-]Arm Statute as set forth in [s]ection 48.193 [sic] and for reasons that are set forth in Topic 3." [ECF No. 30, p. 1] Topic 3 addresses personal jurisdiction. *Id.* at 8. Plaintiff also states that "Florida and California law do not differ when assessing *damages* from a breach of contract in this matter. So it makes no difference which state's law applies." *Id.* at 3 (emphasis added). While that statement may or may not be true on the issue of *damages*, Plaintiff does not address whether Florida and California law are the same on the issue of *liability.*

Moreover, Plaintiff includes no discussion of New Jersey law. As reflected in an email attached to the Complaint, New Jersey is the state where Maven Med was supposed to make the COVID test kits available to Plaintiff. [ECF No. 1, p. 10 ("The test kits will be available for pick up out of the New Jersey warehouse latest on Monday.")]. As discussed below, "questions related to the manner or method of performance under a contract are determined by the law of the place of performance." *Seven Seas Int'l, LLC v. Frigopesca, C.A.*, 616 F. Supp. 3d 1323, 1328–29 (S.D. Fla. 2022).

Plaintiff appears to believe that a choice of law analysis is the same as the analysis required for personal jurisdiction. [ECF No. 30, p. 3 ("[S]ince personal jurisdiction has been achieved under the Florida Long[-]Arm Statute, Florida law should apply to all issues, except the law on service of process which is governed by California law[.]"); *id.* at 16 ("Florida law applies to all three theories of liability pursuant to Florida Long[-]Arm

Statute including damages.")]. If so, then Plaintiff is mistaken. *See Viener v. Casano*, 728 F. App'x 279, 285 n.3 (5th Cir. 2018) ("Mississippi may very well have personal jurisdiction over a party who takes actions in Mississippi to alienate affections, but that does not mean that Mississippi's substantive law should apply in a conflict-of-laws scenario.").

"A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992). Moreover, the Court must apply Florida's conflict-of-law rules to *each* cause of action alleged in the Complaint. *See Bayuk v. Prisiajniouk*, No. 8:18-CV-00163-T-SPF, 2019 WL 4694230, at *3 (M.D. Fla. Sept. 26, 2019) ("Under Florida law, a court makes a separate choice of law determination as to each claim under consideration.").

As noted earlier, Plaintiff alleged three causes of action against Maven Med: breach of contract, conversion, and unjust enrichment. The Undersigned will discuss these causes of action below.

### 1. Breach of Contract

"Florida courts generally enforce choice-of-law provisions in contracts." *Pharma Funding, LLC v. FLTX Holdings*, LLC, No. 20-21103-CIV, 2021 WL 1166051, at *2 (S.D. Fla. Mar. 8, 2021), report and recommendation adopted, No. 20-21103-CIV, 2021 WL 1165420 (S.D. Fla. Mar. 26, 2021). But the purchase order and the invoice in the instant case do not include a choice of law provision.

"Under Florida's conflict-of-law rules, the doctrine of *lex loci contractus* directs that, in the absence of a contractual provision specifying governing law, a contract, other than one for performance of services, is governed by law of the state in which the contract is made." *Shaps v. Provident Life & Acc. Ins. Co.*, 244 F.3d 876, 881 (11th Cir. 2001); *Servant Health, LLC v. McWilliams*, No. 3:22-CV-210-TJC-LLL, 2022 WL 16743962, at *1 (M.D. Fla. Nov. 7, 2022) ("Florida law dictates that in the absence of a contrary agreement by the parties, the Court shall apply the law of the state in *lex loci contractus*[.]").[12]

"*Lex loci contractus* is, in general, an 'inflexible,' bright-line rule that exists 'to ensure stability in contract arrangements.'" *Rando v. Gov't Emps. Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir. 2009) (citing *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So.2d 1160, 1163 (Fla. 2006)).

The Eleventh Circuit has noted that "[t]he determination of where a contract was executed is fact-intensive, and requires a determination of 'where the last act necessary to complete the contract [wa]s done.'" *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1092–93 (11th Cir. 2004) (quoting *Pastor v. Union Cent. Life Ins. Co.*, 184 F.Supp.2d 1301, 1305 (S.D. Fla. 2002) (alteration in original)); *Nat'l Fire & Marine Ins. Co.*

---

[12]    "The rule of *lex loci contractus* governs questions of interpretation, validity, and obligations. . . . [Q]uestions related to the manner or method of performance under a contract are determined by the law of the place of performance." *Seven Seas Int'l, LLC v. Frigopesca, C.A.*, 616 F. Supp. 3d 1323, 1328–29 (S.D. Fla. 2022) (quoting *Higgins v. W. Bend Mut. Ins. Co.*, 85 So. 3d 1156, 1158 (Fla. 5th DCA 2012) (alteration in original; internal citation and quotation marks omitted)).

*v. Adoreable Promotions, Inc.*, 451 F. Supp. 2d 1301, 1306 (M.D. Fla. 2006) ("[A] contract is made at the place where the last act necessary to complete the contract is done." (quoting *Shapiro v. Assoc. Int'l Ins. Co.*, 899 F.2d 1116, 1119 (11th Cir. 1990))). "The last act necessary to complete a contract is the offeree's communication of acceptance to the offeror." *Prime Ins. Syndicate, Inc.*, 363 F.3d at 1093 (citing *Buell v. State*, 704 So.2d 552, 555 (Fla. 4th DCA 1997)).

In *Zurich Am. Ins. Co. v. Tavistock Restaurants Grp., LLC*, the district court, applying the rule of *lex loci contractus*, determined that Georgia law applied to a breach of contract claim because an email accepting the contract was sent from Georgia:

> Here, the "last act" occurred when [the] [p]laintiff's underwriter communicated binder to insure Defendant's properties on December 5, 2019 at 9:26 A.M. via email. The email verified the effective date of coverage, confirmed the existence of a contractual relationship between the parties, and attached the instant Policy. **Because this communication was made from Georgia, where Plaintiff's underwriter was located at the time, the rule of *lex loci contractus* requires the application of Georgia law to this matter**.

No. 6:20-CV-1295-PGB-EJK, 2021 WL 1536648, at *6 (M.D. Fla. Mar. 4, 2021).

In the Undersigned's view, Plaintiff's purchase order [ECF No. 1, p. 7] constituted an offer to purchase a specified quantity of test kits, at a specified price. Maven Med communicated its acceptance from California, either through its invoice [ECF No. 1, p. 8] or through emails, all of which appear to have been prepared in California. In any event,

because the last act necessary to form the contract occurred in California, the rule of *lex loci contractus* dictates that California law governs Plaintiff's breach of contract claim.[13]

## 2. Conversion

Florida law defines conversion as "an unauthorized act which deprives another of his property permanently or for an indefinite time. . . . A conversion occurs when a person who has a right to possession of property demands its return and the demand is not or cannot be met." *Misabec Mercantile, Inc. De Panama v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.*, 853 F.2d 834, 837–38 (11th Cir. 1988) (quoting *Shelby Mutual Ins. Co. v. Crain Press*, 481 So. 2d 501, 503 (Fla. 2d DCA 1985) (alteration in original; internal quotation

---

[13]     The Undersigned makes this determination based on the *limited* facts available concerning the parties' formation of a contract. It may well be that additional facts would change the conclusion that the contract was formed in California, but Plaintiff has not supplied them.

In any event, Plaintiff could have avoided this outcome by simply including a choice of law provision in its purchase order. *See Bavaria Corp. Int'l v. Budenheim USA, Inc.*, No. 609CV633ORL22KRS, 2009 WL 10670757, at *3 (M.D. Fla. Nov. 17, 2009) (observing that "Florida courts overwhelmingly favor upholding choice-of-law provisions unless the court finds that the provision violates fundamental public policy" (citing *Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000)).

Plaintiff could have also pled sufficient facts which -- deemed admitted in the context of a default judgment motion -- would allow the Court to conclude that the contract was formed in Florida. *See, e.g.*, *HostLogic Zrt. v. GH Int'l, Inc.*, No. 6:13-CV-982-ORL-36, 2014 WL 2968279, at *7 (M.D. Fla. June 30, 2014) (determining that Florida law governed the breach of contract claim where the complaint alleged "that the contract was executed in multiple counterparts and that the last signature was made in Florida" and these facts were deemed "admitted, by virtue of [the defendants'] default").

marks omitted)). *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1143 (M.D. Fla. 2007) ("Under Florida law, conversion is an intentional tort consisting of an unauthorized act which deprives another of his property, permanently or for an indefinite time." (citing *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So.2d 1157, 1160–61 (Fla. 3d DCA 1984)).

"Florida law utilizes the 'most significant relationship' test to resolve choice of law questions for tort claims." *Bayuk v. Prisiajniouk*, No. 8:18-CV-00163-T-SPF, 2019 WL 4694230, at *3 (M.D. Fla. Sept. 26, 2019) (citing *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1301 (11th Cir. 2003)). However, in the instant case, the Court does not need to engage in a choice of law analysis concerning Plaintiff's conversion claim because Plaintiff failed to state a conversion claim under *either* state's law. *See, e.g., Byrd v. Jennings*, No. 86-729-CIV-T-13(A), 1988 WL 71731492, at *1 (M.D. Fla. Mar. 10, 1988) ("As the Court finds that plaintiff has no right of action against defendant reinsurers under English, Bermudan or American law, it finds it unnecessary to address the choice of law problem, resolution of which would be rendered more difficult by the plaintiff's total failure to address the issue.").

Both Florida and California law require that a conversion claim be distinguishable from a breach of contract claim. *See Rodriguez v. JPay, Inc.*, No. 19-14137-CIV, 2019 WL 11624312, at *6 (S.D. Fla. Oct. 21, 2019) (dismissing conversion claim that "merely re-cast[ed] the purported breach of contract claim as conversion, which is not permitted

under Florida law"); *Voris v. Lampert*, 7 Cal. 5th 1141, 1151–52, 446 P.3d 284, 291 (2019) (applying California law a noting that "the simple failure to pay money owed does not constitute conversion").

Plaintiff's conversion claim is, at its core, a breach of contract claim. Plaintiff's conversion claim alleges that Defendant failed to return $656,250.00. [ECF No. 1, ¶¶ 19, 24, 27].[14] The $656,250.00 was the agreed upon contract price for the 37,500 COVID test kits. *Id.* at ¶ 22 ("Defendant, MAVEN obtained the $656,250.00 for the specific purchase [sic] of providing 37,500 Covid [sic] test kits from Abbott Labs with a September 2023 expiration date."). Thus, the basis for Plaintiff's conversion claim is the same as its breach of contract claim: Maven Med's failure to deliver the agreed-upon COVID test kits. In short, Plaintiff's conversion claim fails because it is indistinguishable from its breach of contract claim.

Moreover, the property at issue in Plaintiff's conversion claim is money. While under *certain* circumstances money *can* be the object of a conversion claim, [15] the

---

[14]    In the Complaint, Worldwide Distributors refers to the $656,250.00 as "their [sic] personal property." [ECF No. 1, ¶ 21]. However, at the evidentiary hearing, its vice president, Ariel Rodriguez, testified that approximately $384,375.00 was **provided to Plaintiff by Baltimore County.** Plaintiff deposited the funds from Baltimore County into its bank account and wire transferred the full amount ($656,250.00) to Defendant.

[15]    "A debt which may be discharged by the payment of money in general cannot form the basis of a claim for conversion." *Rosen v. Marlin*, 486 So. 2d 623, 625 (Fla. 3d DCA 1986). "In order for money to be an appropriate subject for a conversion claim, there must be an obligation for the receiver to keep intact or deliver the specific money at issue." *Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013);

complaint must plead the defendant's obligation to keep the money intact. *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008) ("For money to be the object of conversion [under Florida law,] 'there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified.'" (quoting *Futch v. Head*, 511 So.2d 314, 320 (Fla. 1st DCA 1987))); *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 815 (N.D. Cal. 2022) (explaining that "California cases permitting an action for conversion of money typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others").

Here, there is no allegation that Maven Med had an obligation to keep the $656,250.00 intact. In fact, at the evidentiary hearing, the Court learned that the money Plaintiff wire transferred to Maven Med's bank account in California was subsequently

---

*see also Batlle v. Wachovia Bank, N.A.*, No. 10-21782-CIV, 2011 WL 1085579, at *2 (S.D. Fla. Mar. 21, 2011) ("Florida law establishes that claim of conversion of money in a bank account is proper where the money is deposited into an account designed to keep money segregated and identifiable, such as a trust or escrow account, or where there is an obligation or fiduciary duty to keep money segregated.").

In *Masvidal v. Ochoa*, for instance, money was the proper subject of a conversion claim because the defendant "lawfully obtained possession of the plaintiff's funds to set up [a] escrow fund and thereafter converted the funds for his own use." 505 So. 2d 555, 556 (Fla. 3d DCA 1987). Conversely, in *Drogueria Betances, LLC v. Forward Shipping Miami, Inc.*, the plaintiff failed to state a claim for conversion under Florida law where "[the plaintiff] allege[d] that [the defendant] accepted payment for [ ] N95 face masks and then failed to deliver them" and "[t]here [was] no allegation that [the defendant] was obligated to keep intact the $660,000 paid by [the plaintiff] or that the money [could] be identified." No. 21-60453-CIV, 2021 WL 6841535, at *3 (S.D. Fla. Apr. 30, 2021).

sent (in whole or in part) to attorney Bonavita in Florida and then later (when the vendor was purportedly unable to secure the test kits with the September 2023 expiration date) sent back to California (with a portion to attorney Alex Herrera's account and the rest to Pramanik and Sudha Bharadwaj's account).[16]

Because Plaintiff's Complaint fails to state a claim for conversion under either Florida or California law, it is not necessary to engage in a choice of law analysis to determine which jurisdiction's law applies.

### 3. Unjust Enrichment

"For unjust enrichment claims, which are quasi-contractual in nature, courts apply Florida's '*lex loci contractus*' rule for choice of law determinations." *T.T. Int'l Co., Ltd v. BMP Int'l, Inc.*, No. 8:19-CV-2044-CEH-AEP, 2022 WL 971950, at *5 (M.D. Fla. Mar. 31, 2022); *HostLogic Zrt. v. GH Int'l, Inc.*, No. 6:13-CV-982-ORL-36, 2014 WL 2968279, at *8 (M.D. Fla. June 30, 2014) ("In Florida, an unjust enrichment claim is in the nature of quasi-contract, and Florida courts look to the *lex loci contractus* when determining what law to apply.").

In *HostLogic Zrt.*, the court determined that Florida law applied to an unjust enrichment claim because "the last necessary act for the unjust enrichment claim occurred in Florida-the location of the bank account to which [the plaintiff] wired funds and the

---

[16]     It is unclear from Mr. Rodriguez's hearing testimony and his attorney's statements to the Court whether attorney Bonavita sent the money to Bharadwaj's personal bank account or Maven Med's corporate bank account.

place where [the defendant] (a Florida corporation with its principal place of business in Florida) wrongfully retained the benefit conferred." *Id.*

Here, California law applies to Plaintiff's unjust enrichment claim because Plaintiff wire transferred the $656,250.00 to Maven Med's Wells Fargo bank account in San Francisco, CA [ECF No. 1, p. 9] and Maven Med refused to return the funds (wrongfully retaining the benefit conferred) in California. Therefore, California law applies to Plaintiff's unjust enrichment claim.

Having determined which state's substantive law applies to each cause of action, the Undersigned will next address whether Plaintiff has stated a cause of action for each claim pled in the Complaint:

   **ii.**   **Causes of Action**

As noted above, the Complaint alleges three causes of action: (1) breach of contract, (2) conversion, and (3) unjust enrichment. [ECF No. 1]. For the reasons discussed below, the Complaint alleges causes of action under California law for breach of contract and unjust enrichment.

   **1. Breach of Contract**

"There are four elements to a breach of contract claim under California law: '(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.'" *Remembrance Grp.,*

*Inc. v. Centazzo*, No. 2:21-CV-675-JES-MRM, 2022 WL 1406673, at *4 (M.D. Fla. May 4, 2022) (citing O*asis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011)).

Here, the Complaint alleges that:

8.     On September 22, 2022, the parties agreed in a purchase order number 4830 that the Plaintiff, WORLDWIDE would sent [sic] the sum of $656,250.00 to the Defendant, MAVEN to purchase from MAVEN, 37,500 Abbott Binary Covid test kits with the expiration date of September, 2023.

9.     That Defendant, MAVEN would purchase the 37,500 Covid test kits from Abbott Labs with a September, 2023 expiration date and these test kits would be shipped and delivered to Baltimore County Property Management at 12200A Long Green Pike, Glenn Arms, MD 21057. (*See* purchase order attached as [E]xhibit 1 to this [C]omplaint, and MAVEN invoice attached as Exhibit 2).

[ECF No. 1, ¶¶ 8-9].

Plaintiff attached to the Complaint copies of the purchase order and invoice. [ECF No. 1, pp. 7-8]. "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Both the purchase order and invoice include the date, a description of the items, the quantity, and the purchase price. [ECF No. 1, pp. 7-8]. The invoice contains an annotation indicating that all 37,500 test kits must show a September 2023 expiration date. Thus, the Complaint alleges the existence of a contract between the parties.

The Complaint further alleges that "Plaintiff WORLDWIDE sent a wire transfer in the amount of $656,250.00 to [ ] Defendant MAVEN[.]" [ECF No. 1, ¶ 10]. Thus, Plaintiff alleged its performance under the contract.

48

The Complaint also alleges a breach: Maven Med's failure to make the test kits available at the agreed upon location. *Id.* at ¶¶ 11-14. Lastly, the Complaint alleges damages: "The Defendant, MAVEN has kept the $656,250.00 and has failed to furnish the 37,500 Covid test kits with a September 2023 expiration date and has not returned the $656,250.00 despite numerous demands from the Plaintiff, WORLDWIDE." *Id.* at ¶ 16. Therefore, Plaintiff has stated a cause of action for breach of contract under California law.

Because, in the context of a default judgment motion, a defaulted defendant is deemed to have admitted all well-pled factual allegations, Plaintiff has met its burden of establishing Maven Med's liability for breach of contract. Nonetheless, and for the reasons discussed above, Plaintiff's Complaint [ECF No. 1] is defective because it fails to plead subject-matter and personal jurisdiction. It must therefore be dismissed.

### 2.  Conversion

Because Plaintiff's conversion claim is merely a recasting of its breach of contract claim, *see supra*, the Complaint [ECF No. 1] has failed to state a cause of action for conversion under either Florida or California law.

### 3.  Unjust Enrichment

"[I]n California, there is not a standalone cause of action for 'unjust enrichment[.]'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Instead,

> "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain*

*Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting Rutherford Holdings, LLC v. Plaza Del Rey, 223 Cal. App. 4th 221 (2014)). The elements for a claim of unjust enrichment under California law are "receipt of a benefit and unjust retention of the benefit at the expense of another." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1132 (2014), as modified on denial of reh'g (Feb. 27, 2014).

*Precisely Software Inc. v. Loqate Inc.*, No. 22-CV-00552-BLF, 2022 WL 4348469, at *3 (N.D. Cal. Sept. 19, 2022).

Here, the Complaint alleges that Worldwide Distributors conferred a benefit -- the $656,250.00 -- on Maven Med and that Maven Med retained that amount, even though no COVID test kits were ever provided. [ECF No. 1, ¶¶ 29, 31]. Therefore, Plaintiff has alleged a cause of action for restitution (unjust enrichment) under California law.

Nonetheless, because Plaintiff has stated a claim for breach of contract, Plaintiff would not also be entitled to a default judgment on the unjust enrichment claim, even if the Complaint [ECF No. 1] were not otherwise defective. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370, 108 Cal. Rptr. 3d 682, 699 (2010) (Under California law, "an unjust enrichment claim does not lie where the parties have an enforceable express contract."); *see also Alegra Motorsports v. Nano Pro Mt*, LLC, No. 8:22-CV-1325-CEH-SPF, 2023 WL 1971899, at *2 (M.D. Fla. Jan. 19, 2023), report and recommendation adopted sub nom. *Alegra Motorsports, LLC v. Nano Pro MT, LLC*, No. 8:22-CV-1325-CEH-SPF, 2023 WL 1967571 (M.D. Fla. Feb. 13, 2023) ("Plaintiff has proven the existence of an express contract, the undersigned recommends the court deny Plaintiff's motion for default judgment on its claim of unjust enrichment."); *Sevares v. Am. Pipeline Constr., LLC*, No.

1:22-CV-21233-KMM, 2023 WL 3191256, at *3 (S.D. Fla. May 2, 2023) (finding the plaintiff was not entitled to a default judgment on his unjust enrichment claim where he had adequately alleged that the defendant was liable for breach of contract); *Venus Concept USA, Inc. v. Smith High Inc.*, No. 1:21-CV-21558-KMM, 2022 WL 3701553, at *3 (S.D. Fla. Apr. 27, 2022) (denying motion for final default judgment on the plaintiff's unjust enrichment, open account, and account stated claims where the plaintiff had successfully alleged facts supporting its breach of contract claim).

In sum, the well-pled factual allegations -- deemed admitted by virtue of Defendant's default -- support the elements of a breach of contract claim. And, although the Complaint also alleges a cause of action for restitution (unjust enrichment), Plaintiff would not be entitled to a default judgment on *both* its breach of contract and restitution (unjust enrichment) claims. But, as already noted, Plaintiff's Complaint is defective and must be dismissed.

### d.    Damages

Plaintiff seeks to recover $656,250.00 in damages. [ECF No. 1, ¶¶ 15-16, 27, 32]. "Plaintiff has the burden of proving the amount of damages to be awarded." *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), report and recommendation adopted, No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (citing *Bautista Hernandez v. Tadala's Nursery, Inc.*, 34 F. Supp. 3d 1229, 1241 (S.D. Fla. 2014)).

Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (damages may be awarded on default judgment only if the record adequately reflects the basis for award). "Rather than merely telling the Court in summary fashion what its damages are, a plaintiff seeking default judgment must show the Court what those damages are, how they are calculated, and where they come from[.]" *Perez v. Gulf Coast Mgmt. Co., LLC*, No. CIV.A. 14-00426-N, 2015 WL 895098, at *6 (S.D. Ala. Mar. 3, 2015).

Here, Plaintiff filed an affidavit from its president, Joseph E. Doyle, attesting that "[o]n October 5, 2022[,] [Plaintiff] wired $656,250.00 to [Defendant]" and that did not return these funds, despite Plaintiff's demands. [ECF No. 18, pp. 9-10]. Moreover, Plaintiff filed a copy of the "Truist Outgoing Domestic Wire Transfer Request Agreement" reflecting a wire transfer dated October 6, 2022 in the amount of $656,250.00 and listing Maven Med, Inc. as the beneficiary. [ECF No. 1, p. 9 (Exhibit 3)]. Ordinarily, these evidentiary submissions are sufficient to establish damages for breach of contract. *See Seven Seas Int'l, LLC v. Frigopesca, C.A.*, 616 F. Supp. 3d 1323, 1330 (S.D. Fla. 2022) ("The Court accepts [the] [p]laintiff's representation in its [a]ffidavit of Maurice Senior . . . that the principal balance owed under the [l]etter of [w]arranty is $103,921.60 . . . . Therefore, the Court finds that [the] [p]laintiff is entitled to default final judgment against

[d]efendant for damages in the principal amount of $103,921.60, plus post-judgment interest.").

At the April 14, 2023 evidentiary hearing, Plaintiff's witness, Ariel Rodriguez, told the Court that the bulk of the $656,250.00 which Plaintiff seeks to recover in damages (approximately $384,375.00) came from Baltimore County. In other words, Baltimore County deposited approximately $384,375.00 into Plaintiff's bank account and Plaintiff wire transferred the full $656,250.00 to Defendant.

This was new information which had not previously been disclosed in Plaintiff's filings. Therefore, in the Post-Evidentiary Hearing Administrative Order, the Undersigned instructed Plaintiff to "file with the Court whatever materials it believes will demonstrate it has standing to pursue the full $656,250.00 in liquidated damages." [ECF No. 25]. The Order provided a list of examples, "an assignment from Baltimore County, a declaration from an appropriate officer, attorney, or agent of Baltimore County, a memorandum of law, additional exhibits, or a combination of these items or additional items to show it has standing to pursue the full amount of liquidated damages." *Id.*

Plaintiff's post-hearing memorandum states as follows:

Ariel Rodriguez testified that [Plaintiff] would agree to repay Baltimore County the first $384,375.00 that [Plaintiff] would recover from MAVEN. Baltimore County is not "in privity" with MAVEN and would be unable to bring a lawsuit against MAVEN. Baltimore County's only option would be to look to [Plaintiff] for recover [sic] of their funds. Plaintiff has been in constant communications with Baltimore County on the status of this matter. [Plaintiff] is advised through their counsel, Jennifer R. Frankovich, Chief of Affirmative Litigation, that the process is that the Office of Law has

to brief the County Executive for the final decision on the assignment. They are scheduled to meet on May 25th, 2023. Once the undersigned receives the assignment we will immediately advise the [C]ourt.

Plaintiff's counsel has not researched the "standing" issue in that we expect that Baltimore County will send the assignment as it is in their best interest. However, in that the funds were wired from [Plaintiff]'s account, [Plaintiff] had lawful possession of the funds from Baltimore County. In the case of *Velez v. Miami-Dade County Police Department*, 934 So. 2d 1162 (Fla. 2006), the Florida Supreme court held a person is [sic] possession of property at the time of the seizure has standing at an Adversarial Preliminary Hearing to challenge probable cause, and is not required to also show a proprietary interest in the property. While *Velez* was a forfeiture case (which the undersigned was counsel). It would appear the same principle should apply. We believe the expected assignment will make this issue moot. **Of course, this Court can structure an order which would require [Plaintiff], upon receiving the $656,250.00 to reimburse Baltimore County for the $384,375 Baltimore County had wired to Plaintiffs [sic]**. We expect to receive the assignment from Baltimore County after their conference on May 25th, 2023. Upon receiving any information from Baltimore County, we will promptly advise the Court.

[ECF No. 30, p. 15-16 (footnote omitted; emphasis added)].

To date, Baltimore County has not filed a notice or motion seeking to participate in this action and no assignment of Baltimore County's cause of action to Worldwide Distributors has been filed in this case.

It is not necessary for the Court to determine damages at this juncture or to determine whether Plaintiff has standing to pursue the full $656,250.00 amount. Plaintiff is not entitled to a default final judgment in its favor because its Complaint is defective and should be dismissed for failure to allege subject-matter and personal jurisdiction.

## IV.    Conclusion

For the reasons stated above, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's Amended Motion for Default Judgment [ECF No. 18], **dismiss without prejudice** the Complaint [ECF No. 1], and provide Plaintiff with an opportunity to file an amended complaint, provided Plaintiff can cure the pleading deficiencies identified herein. Before filing an amended complaint, Plaintiff must ensure that Defendant is subject to this Court's jurisdiction under the Florida long-arm statute and that the requirements of due process are met. If Plaintiff cannot satisfy these conditions, then it should not file an amended complaint.

The Clerk of the Court is directed to mail a copy of this Report and Recommendations to Maven Med, Inc. at the address listed below and to file a notice of compliance on CM/ECF.

## V.    Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Court Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of

justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, June 15, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record

Maven Med, Inc.
844 S. Bramble Way
Anaheim, CA 92808